IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROXANNE ALEXANDRA CORDOVA,

    Plaintiff,

v.                                                                                                        No. 17-cv-0611 SMV

**NANCY A. BERRYHILL,**
**Acting Commissioner of the Social Security Administration,**

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 19] ("Motion"), filed on February 7, 2018. The Commissioner responded on April 9, 2018. [Doc. 21]. Plaintiff replied on April 25, 2018. [Doc. 24]. The parties have consented to the undersigned's entering final judgment in this case. [Doc. 9]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the Administrative Law Judge ("ALJ") did not apply the correct legal standards in evaluating Dr. Walker's opinion. Accordingly, the Motion will be granted, and the case will be remanded for further proceedings. *See* 42 U.S.C. § 405(g) (sentence four).

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481. This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Courts must meticulously review the entire record but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

### **Applicable Law and Sequential Evaluation Process**

In order to qualify for disability benefits, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

2

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) she is not engaged in "substantial gainful activity"; *and* (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) her impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) she is unable to perform her "past relevant work." 20 C.F.R. § 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If she cannot show that her impairment meets or equals a Listing, but she proves that she is unable to perform her "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering her residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

**Procedural Background**

Plaintiff applied for supplemental security income on February 1, 2013. Tr. 11. She alleged a disability-onset date of January 1, 1999. *Id.* Her claim was denied initially and on reconsideration. *Id.* ALJ Ann Farris held a hearing on December 8, 2015, in Albuquerque, New Mexico. Tr. 11, 25–58. Plaintiff appeared with her attorney. *Id.* The ALJ heard testimony from Plaintiff and an impartial vocational expert ("VE") Pamela A. Bowman. *Id.*

The ALJ issued her unfavorable decision on March 30, 2016. Tr. 20. At step one she found that Plaintiff had not engaged in substantial gainful activity since the date of her

---
[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

application. Tr. 13. At step two, the ALJ found that Plaintiff's lupus, affective disorder, and aseptic necrosis of both hips were severe. *Id.* She further found that Plaintiff's migraine headaches and hypothyroidism were not severe. *Id.*

At step three the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 14–15. Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 15–19. The ALJ found that Plaintiff had

> the [RFC] to perform sedentary work (lift 10 pounds occasionally, stand/walk for two hours in an eight-hour workday[,] and sit for six hours in an eight-hour workday) as defined in 20 [C.F.R. §] 416.967(a) except she can handle and finger objects only frequently. [Plaintiff] is limited to simple, routine tasks and occasional interaction with the public.

Tr. 15.

At step four the ALJ found that Plaintiff had no past relevant work. Tr. 19. Accordingly, the ALJ went on to consider Plaintiff's RFC, age, education, work experience, and the testimony of the VE at step five. Tr. 19–20. She found that Plaintiff could perform work that exists in significant numbers in the national economy and, therefore, was not disabled. *Id.* Plaintiff requested review from the Appeals Council, but that request was denied on April 4, 2017. Tr. 1–3. Plaintiff timely filed the instant action on June 5, 2017. [Doc. 1].

## **Analysis**

Plaintiff fails to show error in the evaluation of her treating physician, Dr. Sibbitt. Nevertheless, remand is warranted because the ALJ erred in failing to explain why she rejected Dr. Walker's assessments of certain moderate limitations. Because proper evaluation of

4

Dr. Walker's opinion may render moot Plaintiff's other alleged errors, the Court declines to pass on them at this time.

## I. Plaintiff fails to show reversible error in the evaluation of Dr. Sibbitt's treating opinion.

Social Security regulations require that, in determining disability, the opinions of treating physicians be given controlling weight when those opinions are well-supported by the medical evidence and are consistent with the record. 20 C.F.R. § 416.927(c)(2). This is known as the "treating physician rule." *Langley*, 373 F.3d at 1119. The idea is that a treating physician provides a "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations," and therefore, a treating physician's opinion merits controlling weight. *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).

In order to receive controlling weight, treating physician opinions must be both supported by medical evidence and consistent with the record. If not, the opinions may not merit controlling weight but still must be given deference and weighed using the following six factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); *see* 20 C.F.R. § 416.927(c). However, not every factor is applicable in every case, nor should all six factors be seen as absolutely necessary. What is absolutely necessary, though, is that the ALJ give good reasons—

reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"—for the weight she ultimately assigns to the opinions. *Langley*, 373 F.3d at 1119; *see* 20 C.F.R. § 416.927(c)(2); *Branum v. Barnhart*, 385 F.3d 1268, 1275 (10th Cir. 2004).

In sum, when properly rejecting a treating physician's opinion, an ALJ must follow two distinct phases. First, the ALJ must find that the opinion is not supported by medical evidence and/or is not consistent with the record. Second, the ALJ must still give deference to the opinion and weigh it according to the factors listed above. Like all findings, an ALJ's findings in these two phases must be supported by substantial evidence.

Here, Plaintiff's treating rheumatologist, Dr. Sibbitt, offered two opinions: one in the form of a letter dated November 10, 2015, Tr. 499, and the second in a medical source statement dated November 30, 2015, Tr. 532–33. In these reports, Dr. Sibbitt opined that Plaintiff was "not employable" due to very seriously limitations, such as standing or walking, each for no more than 30 minutes per day. Tr. 499. He attributed her extreme limitations to systemic lupus erythematosus, arthritis, fatigue, Raynaud's syndrome, joint pain, memory problems, chest pain, and disability. *Id.* Further, Dr. Sibbitt explained that Plaintiff's hypothyroidism and encephalopathy caused marked limitations in many areas of mental functioning. Tr. 532. The ALJ discussed and rejected each opinion. Tr. 17.

First, the ALJ gave several reasons for according no weight to the letter dated November 10, 2015. (1) "Doctor Sibbitt noted that [Plaintiff] had not been seen at his clinic for over a year before she appeared in November 2015—one month prior to the hearing—*requesting* crutches." *Id.* (2) The extreme severity of the opined limitations detracted from the credibility of the opinion. *Id.* (3) There was a lack of support for the extreme nature of the opinion in Dr. Sibbitt's own notes. *Id.* (4) The opinion was "grossly disproportionate" to other,

contemporary records." *Id.* Finally, and clearly most important to the ALJ was (5) Plaintiff's non-compliance with medication and erratic clinic appointments. *Id.* The ALJ found that Plaintiff's non-compliance with treatment undermined the credibility of Dr. Sibbitt's opinion and evidenced "self-inflicted limitations for which a finding of disability [wa]s not appropriate." Tr. 18, *see* Tr. 17.

Plaintiff takes issue with two of the ALJ's reasons for rejecting the November 10, 2015 opinion. [Doc. 19] at 16–18. She argues that the ALJ failed to specify what inconsistencies she found between Dr. Sibbitt's opinion and his treatment notes. Plaintiff also complains that the ALJ only cited to one record that contradicted Dr. Sibbitt's opinion. *Id.* at 18. Plaintiff then cites to records that she believes are consistent with Dr. Sibbitt's opinion. *Id.* The Court is not persuaded.

Even though Plaintiff points to certain records that she believes are consistent with Dr. Sibbitt's opinion, *id.* (citing Tr. 442, 437–38, 383–84), Defendant points to other records that she believes are not consistent, [Doc. 21] at 11 (citing Tr. 501, 478, 476, 232, 321, 323, 382, 438). In reply, Plaintiff does not dispute Defendant's assertion that there are records that could be interpreted as inconsistent with Dr. Sibbitt's opinion. *See* [Doc. 24] at 2–3. Rather, Plaintiff focuses on two records identified by the ALJ as inconsistent with Dr. Sibbitt's opinion. Plaintiff argues that the records should not necessarily be seen as inconsistent with Dr. Sibbitt's opinion. *Id.* The problem with Plaintiff's position is that it does not address the standard of review. If there is substantial evidence—that is, more than a mere scintilla—to support the ALJ's finding (that Dr. Sibbitt's own records failed to support his opinion), then the finding must be affirmed. This Court may not reweigh the evidence. The ALJ's stated reasons for rejecting Dr. Sibbitt's

7

opinion are legally sufficient, and Plaintiff fails to show that they are not supported by substantial evidence.

Second, the ALJ rejected the November 20, 2015 medical source statement from Dr. Sibbitt. Tr. 17. The ALJ mistook the opinion as having been authored by Dr. Bankhurst, when in fact, it was signed by Dr. Sibbitt. *Compare* Tr. 17 (ALJ's findings), *with* Tr. 532–33 (opinion at issue, bearing Dr. Sibbitt's signature). The ALJ effectively rejected the opinion because it attributed Plaintiff's limitations to being "frequently hypothyroid," and the ALJ attributed Plaintiff's hypothyroid symptoms to her "frequent failure to take hypothyroid medicine." Tr. 17. She also explained that the opinion was not credible because it cited carpal tunnel syndrome, which was not established anywhere in the record. *Id.* Finally, she rejected the opinion because she mistakenly believed it was authored by Dr. Bankhurst, who had no treating relationship with Plaintiff. *Id.*

Plaintiff challenges the ALJ's rejection of the medical source statement on one ground: because it was actually authored by Dr. Sibbitt, who is Plaintiff's treating provider. [Doc. 19] at 16–17. Plaintiff does not challenge the ALJ's other reasons for rejecting the opinion. *See id.* Disregarding the rationale connected to Dr. Bankhurst, the remaining reasons are legally sufficient for rejecting the medical source statement. Indeed, Plaintiff does not challenge them. Reversal, therefore, is not warranted based on the ALJ's evaluation of Dr. Sibbitt's opinions.

<u>II. The ALJ failed to apply the correct legal standard
in evaluating the non-examining opinion of Dr. Walker.</u>

Although ALJs need not discuss every piece of evidence, they are required to discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. § 416.927(e)(2)(ii)). That is, when assessing a plaintiff's RFC,

an ALJ must explain what weight she assigns to each opinion and why. *Id.* "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity . . . because the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted)); *see Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) (same). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (internal brackets omitted) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). ALJs are required to provide "appropriate *explanations* for accepting or rejecting such opinions." Social Security Ruling ("SSR") 96-5p, 1996 WL 374183, at *5 (emphasis added); *see Keyes-Zachary,* 695 F.3d at 1161 (same) (citing 20 C.F.R. § 416.927(e)(2)(ii)). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5, at *20, 1996 WL 374184, at *7. The ALJ's reasons must be specific and legitimate. *Chapo*, 682 F.3d at 1291.

Dr. Walker offered a non-examining opinion that Plaintiff had moderate limitations in the following areas:

- The ability to understand and remember detailed instructions.

- The ability to carry out detailed instructions.

- The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

- The ability to interact appropriately with the general public.

- The ability to accept instructions and respond appropriately to criticism from supervisors.

- The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

- The ability to set realistic goals or make plans independently of others.

Tr. 93–95. The ALJ found that Dr. Walker's "conclusions [were] consistent with the overall record." Tr. 18. She noted that Dr. Walker had not examined Plaintiff, and she accorded his opinion moderate weight. *Id.* Plaintiff argues that the ALJ ignored the moderate limitations in Plaintiff's ability to interact with supervisors and coworkers; the ALJ neither incorporated them into the RFC, nor explained their omission. [Doc. 19] at 20. Therefore, as Plaintiff sees it, the ALJ failed to apply the correct legal standard in weighing Dr. Walker's opinion. *Id.* The Court agrees.

### A. The ALJ must consider the doctor's entire opinion.

Defendant's arguments in support of the ALJ's decision are without merit. [Doc. 21] at 13–14. Defendant argues that Dr. Walker's "actual mental RFC assessment" (referred to as "Section III") is the only part of his opinion that matters. *Id.* The implication is that the ALJ was permitted to ignore the other parts of the opinion (e.g., Section I).

### i. The distinction between Section I and Section III is aimed at the doctor who completes the MRFCA form; it is not material to how the ALJ weighs the nonexamining opinion.

An explanation of the relevant administrative process is necessary here. At the initial and reconsideration stages,[3] the ultimate determination of disability can be made by a "medical consultant." This is a doctor who is an expert in evaluating claims for disability benefits. Program Operations Manual System ("POMS") § DI 24501.001(B)(2). The doctor weighs the evidence in the file in order to make findings as to the claimant's RFC (and, ultimately, as to

---

[3] When a claimant applies for disability benefits, the Commissioner's first pass at the application occurs at the "initial" stage. If the application is denied, the claimant may request "reconsideration." If the claim is again denied, she may request a hearing before an ALJ. If the claim is denied by the ALJ, she may request that the Appeals Council review the ALJ's decision. If the Appeals Council denies review, she may file a lawsuit in federal court.

whether she is disabled and entitled to benefits). POMS §§ DI 24501.001(B)(2); 24501.005(B)(1), (C). In other words, at the initial and reconsideration stages, the doctor himself is the adjudicator. *Id.*

To record his RFC assessment, the doctor utilizes form SSA-4734-F4-SUP, the Mental Residual Functional Capacity Assessment ("MRFCA") form. POMS DI §§ 24510.005(B)(2); 24510.061(A). The POMS explains that in order "[t]o assure a comprehensive assessment of mental RFC, the [MRFCA form] requires the [doctor] to first record preliminary conclusions about the effect of the impairment(s) on each of four general areas of mental function [in Section I,] then to prepare a narrative statement of mental RFC [in Section III]." POMS § DI 24510.061(A) (emphases omitted). For example, a claimant is "'Moderately Limited' when the evidence supports the conclusion that the individual's capacity to perform the activity is impaired." POMS § DI 24510.063(B) (emphases omitted). When the doctor finds a claimant moderately limited in a certain area, "[t]he degree and extent of the capacity or limitation must be described in a narrative format in Section III." POMS § DI 24510.063(B)(2) (emphases omitted). "Section III is for recording the formal narrative mental RFC assessment and provides for the [doctor] to prepare a narrative statement for each of the subsections (A through D) in [S]ection I." POMS § DI 24510.065(A), *see* (B). In other words, the doctor must incorporate all of his Section I findings into his Section III narrative RFC assessment.

At the stages that the doctor makes these RFC findings, i.e., at the initial and reconsideration stages, his RFC findings are *not* evidence. POMS § DI 24515.007(3)(a). The MRFCA form, which contains his RFC findings, is not evidence; rather, it is a decision. The POMS expressly clarifies that when the doctor is acting as an adjudicator (i.e., at the initial and

11

reconsideration stages), his "findings are not opinion evidence, but are formal determinations based on weighing of all the evidence[.]" *Id.*

Later in the administrative process, however, if the case comes before an ALJ, the nature of the MRFCA form changes. At the ALJ stage, the doctor's MRFCA form is no longer the adjudication of the case; rather it becomes *evidence* that the ALJ must consider in making her own new, independent findings. The ALJ considers the doctor's MRFCA form along with all of the other evidence in the file. This MRFCA form has been completed by a doctor, acting as an adjudicator, at an earlier administrative stage. Because that doctor never examined the claimant, ALJs (and courts) refer to him as the "nonexamining physician" and refer to his report as the "nonexamining opinion." In other words, when the case percolates up to an ALJ, the findings on the MRFCA form change from an adjudication of the claim to a "nonexamining opinion" about the claim.

At the ALJ-stage (and thereafter) the *entire* MRFCA form—all of the findings on the MRFCA form—is considered the doctor's "opinion." POMS DI § 24515.007(1)(b) ("All evidence from nonexamining sources is opinion evidence."); *see* POMS §§ DI 24515.002(B)(2) ("Medical opinions are statements from physicians and psychologists . . . that reflect judgments about the nature and severity of a claimant's impairment(s), including any of the following: a. Symptoms, b. Diagnosis and prognosis, c. What the claimant can still do despite impairment(s), and d. Physical or mental restriction."); 24510.010(A)(2) ("The medical source statement must always be carefully considered and addressed."). The distinction between Section I and Section III, which was meaningful for the physician adjudicator, has little to no bearing on how the ALJ must weigh the MRFCA report. POMS § DI 24515.007(3)(b) ("At the . . . [ALJ]. . . hearing . . . level . . . , the ALJ . . . will consider findings of fact made by DDS

medical and psychological consultants . . . regarding the nature and severity of an individual's impairment(s) as expert opinion evidence of nonexamining sources."). Appreciating the administrative context in which the MRFCA form is generated is helpful because it clarifies that the POMS' distinction between Section I and Section III is aimed at the doctors who complete the forms, not at the ALJs.

In the instant case, however, Dr. Walker's opinion contains neither a "Section I" nor a "Section III." Tr. 93–95. Although the report is entitled "Mental Residual Functional Capacity Assessment," Tr. 93, it is not recorded in the format that has been traditionally used. In the past, a doctor's MRFCA was recorded on a stand-alone form. That form contained sections that were labeled I, II, and III. It is these sections to which Defendant's argument refers. *See* [Doc. 21] at 13–15.

Here, Dr. Walker's MRFCA was not recorded on the traditional stand-alone form with Sections I, II, and III. Rather, his MRFCA was recorded using the newer Electronic Claims Tool ("eCAT"). Tr. 93–95. The MRFCA, as recorded in eCAT, contains neither a "Section I," nor a "Section III." *Id.* There simply is nothing on the doctor's reports reflecting any "Section." *Id.* Having reviewed hundreds of these forms in the past, the Court can make an educated guess as to which portions of the MRFCA might constitute the Section I and Section III findings in the traditional form. However, the Court cannot agree with Defendant that in this case, the ALJ was permitted to ignore the "Section I" findings when there is no "Section I" in Dr. Walker's report.

### ii. The relevant authorities require the ALJ to consider a medical opinion in its entirety.

More to the point, there simply is no authority permitting an ALJ to ignore any portion of a doctor's opinion, regardless of whether it is labeled as "Section I" or not. *Silva v. Colvin*, 203

13

F. Supp. 3d 1153 (D.N.M. 2016) (thoroughly explaining the multiple sources of authority requiring ALJs to evaluate source opinions in their entirety and rejecting the argument that an ALJ may ignore any portion of an opinion). "The POMS' distinction between Section I and Section III is aimed at the doctor who completes the MRFCA form; *it is not material to how the ALJ weighs the nonexamining opinion*." *Silva*, 203 F. Supp. 3d at 1159 (emphasis added). To the contrary, the POMS explicitly and repeatedly requires the ALJ to consider nonexamining opinions in their entirety. *Id.* at 1160–61 (surveying and discussing the authorities and citing *e.g.*, POMS § DI 24515.007(1)(b) ("All evidence from nonexamining sources is opinion evidence.")).

Like the POMS, the regulations also belie Defendant's position. *Id.* at 1161–62 (citing 20 C.F.R. §§ 416.927(e)(2)(i), 416.912(b)(1)(viii)). The regulations require the ALJ to consider the doctor's opinion in its entirety. There is no exception for the Section I findings.

In line with the POMS and the regulations, the case law also requires the ALJ to consider a doctor's opinion in its entirety. For example, in *Haga v. Astrue*, the Tenth Circuit held that an ALJ erred in failing to explain why he adopted some of a consultative examiner's ("CE") restrictions but rejected others. 482 F.3d 1205, 1208 (10th Cir. 2007). "[T]he ALJ did not state that any evidence conflicted with [the CE's] opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of [the CE's] restrictions but not others." *Id.* The court, therefore, remanded "so that the ALJ [could] explain the evidentiary support for his RFC determination." *Id.* Later, the Tenth Circuit expressly applied *Haga* and its reasoning to the opinions of nonexamining physicians in *Frantz v. Astrue*, 509 F.3d 1299, 1302–03 (10th Cir. 2007).

Defendant does not address *Haga* or *Frantz*. *See* [Doc. 21]. Instead, she cites to one case that, if read in a vacuum, could be misinterpreted as licensing an ALJ to ignore findings that are recorded in Section I. [Doc. 21] at 13 (citing *Smith v. Colvin*, 821 F.3d 1264, 1268–69 & n.2 (10th Cir. 2016) ("As discussed above, Dr. Frommelt's notations of moderate limitations served only as an aid to her assessment of [RFC]. We compare the [ALJ's] findings to Dr. Frommelt's opinion on [RFC], not her notations of moderate limitations.")).

For the Commissioner's argument to carry any weight, the Court would have to find that *Smith* implicitly overrules *Haga* and *Frantz*. To the extent the Commissioner invites the Court to interpret *Smith* as overruling *Haga* and *Frantz*, the Court declines. *Smith* does not overrule *Haga* and *Frantz*. One panel of the circuit court cannot overrule another. *United States v. Brown*, 400 F.3d 1242, 1256 (10th Cir. 2005); *United States v. Foster*, 104 F.3d 1228, 1229 (10th Cir. 1997). "Absent an intervening Supreme Court or en banc decision justifying such action, [the Tenth Circuit Court of Appeals] lack[s] the power to overrule [its] own precedent." *Thompson v. Weyerhaeuser Co.*, 582 F.3d 1125, 1130 (10th Cir. 2009) (citing *United States v. Hernandez-Rodriguez*, 352 F.3d 1325, 1333 (10th Cir. 2003)). The portion of *Smith* that the Commissioner refers to is contained in a footnote. 821 F.3d at 1269 n.2. It is only a dictum. It does not overrule *Haga* and *Frantz*

Considering the POMS, the regulations, and *Haga* and *Frantz*, the Court cannot interpret the relevant case law as supporting Defendant's argument that the ALJ in this case was permitted omit some of Dr. Walker's limitations, without explaining the omission.

15

## B. The ALJ's RFC assessment fails to adequately account for Dr. Walker's limitations.

If the moderate limitations assessed by Dr. Walker had been accounted for in his own RFC opinion (i.e., "Section III"), then Defendant's argument might be more persuasive. An ALJ may rely exclusively on the Section III findings only with an essential caveat: the Section III findings must adequately account for the Section I findings. *See Nelson v. Colvin*, 655 F. App'x 626 (referring to the doctor's Section I findings versus his Section III findings but ultimately deciding that the ALJ's RFC accounted for all of the Section I findings (as opposed to finding that the ALJ was free to disregard the Section I findings entirely)); *Lee v. Colvin*, 631 F. App'x 538, 541 (10th Cir. 2015) (finding that the POMS' distinction between the purposes of Section I and Section III "does not mean, of course, that the ALJ should turn a blind eye to any moderate limitations enumerated in Section I that are not adequately explained in Section III.") (emphases omitted); *Fulton v. Colvin*, 631 F. App'x 498, 502 (10th Cir. 2015) ("Where a psychologist's Section III narrative does not contradict any Section I limitations and describes the effect each Section I limitation would have on the claimant's mental RFC, the ALJ may properly look to only the Section III narrative as the psychologist's opinion regarding mental RFC. The ALJ did so here . . . . And we do not see any contradiction between Sections I and III of Dr. Kendall's [report] or any failure to describe in Section III the effects of any Section I limitations on [the plaintiff]'s capacity for work.") (internal citations omitted); *Carver v. Colvin*, 600 F. App'x 616, 618–19 (10th Cir. 2015) (acknowledging the POMS' distinction between Section I and Section III, but holding that an ALJ may not "turn a blind eye to moderate Section I limitations," and ultimately finding that the Section I limitations at issue were accounted for in the Section III findings); *Jaramillo v. Colvin*, 576 F. App'x 870, 874 (10th Cir. 2014) (acknowledging the

POMS' distinction between Section I and Section III, analyzing whether the ALJ's RFC (presented to the VE in a hypothetical question) "adequately account[ed]" for the Section I findings, and ultimately finding that the Section I limitations at issue were accounted for in the ALJ's RFC).

Plaintiff concedes that the ALJ's RFC assessment, which limited her to "simple, routine" work, i.e., unskilled work, "account[ed] for the moderate limitations Dr. Walker found in understanding, remembering, and carrying out detailed instructions[.]" [Doc. 24] at 6. However, Plaintiff argues that other moderate limitations assessed by Dr. Walker are not accounted for, namely:

- The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

- The ability to accept instructions and respond appropriately to criticism from supervisors.

- The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

*See id.*; Tr. 94. Defendant does not address this point; she appears to hang her hat entirely on her argument that the ALJ was permitted to ignore the limitations. *See* [Doc. 21] at 13–14. To the extent, however, that Defendant argues that the limitation to simple, routine (i.e., unskilled) work adequately captured all of Dr. Walker's moderate limitations, *see id.* at 14, the Court disagrees.

"There may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations." *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015); *see also Chapo*, 682 F.3d at 1290 n.3 (finding that a limitation to unskilled work accounted for "issues of skills transfer, not impairment of mental functions—which are not skills but, rather, general prerequisites for most work at any skill level"). This appears to be such a case; the RFC assessment does not adequately address the mental limitations at issue.

17

Limiting Plaintiff to simple, routine (or unskilled) work,[4] as the ALJ did here, does not account for moderate limitations in her ability to (1) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (2) accept instructions from and respond appropriately to criticism from supervisors, and (3) get along with coworkers or peers without distracting them or exhibiting behavioral extremes. This discrepancy is evident by the fact that these mental abilities are considered "critical" for unskilled work. POMS § DI 25020.010(B)(3)(i), (k), and (l).[5]

Moreover, SSR 96-9p indicates that a limitation in the ability to respond appropriately to supervision or to coworkers is not accounted for in a limitation to unskilled work. Where an individual such as Plaintiff is limited to sedentary, unskilled work, an additional "substantial loss" in the ability to respond appropriately to supervision or to coworkers "would justify a finding of disability." SSR 96-9p, 1996 SSR LEXIS 6, at *26, 1996 WL 374185, at *9 (1996).

> A less than substantial loss of ability to [respond appropriately to supervision and coworkers] may or may not significantly erode the unskilled sedentary occupational base. The individual's remaining capacities *must be assessed and a judgment made* as to their effects on the unskilled occupational base considering the other vocational factors of age, education, and work experience. When an individual has been found to have a limited ability in one or more of these basic work activities, it may be useful to consult a vocational resource.

*Id.* (emphasis added). If unskilled work encompassed a moderate limitation in the ability to respond appropriately to supervision or to coworkers, this portion of the SSR would not be

---

[4] The Court finds no material difference in the RFC's limitation to "simple, routine tasks" and "unskilled" work. *See* SSR 96-9p, 1996 SSR LEXIS 6, at *9, 1996 WL 374185, at *9 (defining mental requirements of unskilled work to include "[u]nderstanding, remembering, and carrying out simple instructions"); *Vigil*, 805 F.3d at 1204 (equating simple work with unskilled work).

[5] Nor does the other limitation in the RFC assessment capture these limitations. *See* Tr. 15 (only occasional interaction with the public).

necessary. Based on the POMS' description of mental abilities "critical" for unskilled work, as well as SSR 96-9p's explanation of the effect of certain mental abilities on the sedentary, unskilled occupational base, the Court finds that the limitations at issue here—to (1) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (2) accept instructions from and respond appropriately to criticism from supervisors, and (3) get along with coworkers or peers without distracting them or exhibiting behavioral extremes—are not adequately accounted for in the RFC assessment in this case. Without an explanation for why the limitations were omitted, remand is warranted.

## Conclusion

Plaintiff fails to show error in the evaluation of her treating physician, Dr. Sibbitt's opinions. Nevertheless, remand is warranted to revisit the opinion of Dr. Walker because the ALJ failed either to incorporate Dr. Walker's assessed limitations into the RFC or to explain the omission. Because proper evaluation of Dr. Walker's opinion may render moot Plaintiff's other alleged errors, the Court declines to pass on them at this time.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand for a Rehearing [Doc. 19] is **GRANTED**. The Commissioner's final decision is reversed, and this case is remanded for further proceedings in accordance with this opinion.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**